UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

JUDY SANDRA MCAMIS )
 )
V. ) NO. 2:16-CV-141
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 405, *et seq.,* was denied following an administrative hearing before an Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 19], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 21].

I. **Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal*

*Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

## II. Sequential Evaluation Process

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

## III. Plaintiff's Vocational Characteristics

The plaintiff was 59 years of age at the time she alleges her disability began on July 15, 2012. The ALJ considered her to be "closely approaching retirement age" under 20 C.F.R. § 404.1563(b). She has a limited education. All parties agree that she cannot perform any of her past relevant work.

## IV. Evidence in the Record

Plaintiff's medical history, and her testimony at the administrative hearings, are described in the Commissioner's brief [Doc. 22] as follows:

> Plaintiff was born in 1953 and alleged disability beginning in 2012, at age 59 (Tr. 209). In a disability report, she alleged disability due to the physical impairment of osteoporosis (Tr. 213). At an administrative hearing, she also mentioned difficulty breathing and pain in her right leg (Tr. 68-69).
> In August 2012, Plaintiff saw an advanced practice nurse at the Hawkins County Health Department for an eye infection and anxiety (Tr. 300-01). She also complained of pain in her right foot with numbness in her toes (Tr. 301). Except for an eye infection and some tearfulness, a physical examination was normal (Tr. 300). Later that month, Plaintiff returned to the Health Department for a follow-up and breast examination (Tr. 298-99). Plaintiff reported that her foot pain was "better" (Tr. 298). Except for tender nodule in the left breast, a physical examination was normal (Tr. 298). Plaintiff returned two months later, in October 2012, and a physical examination was generally normal (Tr. 296).
> In January 2013, Plaintiff visited the Health Department for a follow-up breast examination, which was normal (Tr. 319-20). She requested a primary care appointment to discuss osteoporosis and bone density results from 2006 (Tr. 320).

The next month, Plaintiff reported to an agency employee that she was diagnosed with osteoporosis in 2006 but was never treated (Tr. 334). She said doctors told her that "at her age [osteoporosis] is very likely" and that she needed to drink "a lot of milk" (Tr. 334).

Also in February 2013, Plaintiff visited the Health Department complaining of congestion (Tr. 317-18). She reported shortness of breath and wheezing, and she had scattered wheezes and diminished breath sounds on examination (Tr. 317-18). The examination was otherwise normal, and an advanced practice nurse assessed a cough, chronic obstructive pulmonary disease (COPD) with tobacco use, osteopenia, and bipolar depression (Tr. 317-18). A week later, Plaintiff returned to the Health Department for a recheck (Tr. 315-16). On examination, she exhibited a wheeze and had a loose cough (Tr. 315). The advanced practice nurse reviewed Plaintiff's last bone density study, which showed osteopenia with a "t-value" of "-1.8" (Tr. 283, 315). Examination of the extremities was normal (Tr. 315).

Plaintiff returned to the Health Department in June 2013 for a recheck (Tr. 371-72). She reported doing well and, except for wheezing and course breath sounds, a physical examination was normal (Tr. 371). Two days later, Plaintiff returned with high cholesterol and complaints of burning pain in her feet (Tr. 369). The provider recommended lifestyle changes, including increased activity (Tr. 370).

On June 27, 2013, Plaintiff saw Jon Wireman, M.D., at the request of the state agency, for a consultative physical examination (Tr. 341-50). On examination, Plaintiff had a normal gait and station, could tandem walk, and could stand on her heels and toes (Tr. 341). On range of motion testing of the lumbar spine, she flexed to greater than 90 degrees, extended to 25 degrees, and laterally flexed to 25 degrees in both directions (Tr. 341). Pulmonary function testing resulted in pre-bronchodilation FEV1 values of 1.20, 1.31, and 1.23; and post-bronchodilation FEV1 values of 1.49, 1.43, and 1.50 (Tr. 342). The testing also resulted in pre-bronchodilation FVC values of 1.81, 1.91, and 2.01; and post-bronchodilation FVC values of 2.31, 2.19, and 2.24 (Tr. 342). The testing contained notations of "borderline obstruction" and "mild restriction" (Tr. 345-60). Plaintiff's height without shoes was recorded as 61 inches (Tr. 342).

In September 2013, Saul Juliao, M.D., reviewed the record and concluded that, in an 8-hour workday, Plaintiff could: occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for about 6 hours; sit for about 6 hours; frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and never climb ladders, ropes, and scaffolds (Tr. 110-11). Dr. Juliao also found that Plaintiff should avoid concentrated exposure to extreme temperatures, vibration, pulmonary irritants, and hazards such as machinery and heights (Tr. 111).

Plaintiff went to the Health Department later the same month for a recheck (Tr. 366-67). The provider indicated an abnormal examination of the lungs, but the examination was otherwise normal (Tr. 366). The provider refilled Plaintiff's

4

medications and encouraged her to quit smoking (Tr. 367). In January 2014, Plaintiff went to the Health Department for medication refills and reported no new problems (Tr. 364-65). On examination, she some abnormal breath sounds, some wheezing, and mild swelling in the extremities (Tr. 364).

      In May 2014, Plaintiff again reported to the Health Department for medication refills and reported no new problems (Tr. 362-63). The advanced practice nurse noted that Plaintiff took medication for osteopenia (Tr. 362). On examination, Plaintiff had mild congestion and some wheezing with respiration, and the examination was otherwise normal (Tr. 362). The provider refilled Plaintiff's medications and assessed COPD, depression, and osteopenia (Tr. 363).

      Plaintiff was admitted to the crisis stabilization unit of a hospital for depression and anxiety in July 2014 (Tr. 490-92). She reported no medical issues, walked with a normal gait on examination, and showed normal muscle tone and strength (Tr. 491).

      In August 2014 and January 2015, Plaintiff testified at administrative hearings (Tr. 37-50, 56-69). She testified that her problems primarily arose from her mental impairments (Tr. 57). She said she spent her time watching television and doing nothing else (Tr. 47-49, 58). She stated that she had difficulty walking long distances due to breathing trouble (Tr. 68). She also testified that she experienced burning pain that ran from her hip to her right foot (Tr. 68-69).

[Doc. 22, pgs. 2-5].

As stated above, there were two administrative hearings held regarding the plaintiff's application. At the second one on January 23, 2015, the ALJ took the testimony of Kristi Lilly, a vocational expert ["VE"]. The ALJ asked Ms. Lilly to assume a person of the same age, educational level, and work experience as the plaintiff. He asked her to assume the person could do medium work.[1] He also asked the VE to assume that the person could perform "frequent posturals", but with no use of ropes, ladders or scaffolds. Also the person would need to avoid concentrated exposure to hazards, and fumes and other respiratory irritants. Finally, the person would be limited to simple, routine, repetitive work with only occasional contact with co-workers, supervisors and

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

the public. When asked if there were jobs available that this person could perform, the VE identified jobs of a motor vehicle assembler with 14,300 positions in Tennessee and 318,200 jobs in the nation; store laborer with 570 in Tennessee and 20,990 in the nation; and as a hand packager, with 1,100 in the state and 41,350 in the nation (Tr. 81-82). The ALJ also asked if jobs existed at the light and sedentary levels of exertion with those same restrictions, and the VE identified various jobs which would be available (Tr. 82-83). However, the existence of those jobs is irrelevant in this case because, given the plaintiff's age, education, and past work experience, she would be disabled under the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 [the "Grid"] even if she could do the full range of light or sedentary work.[2]

## V. ALJ's Findings

On February 5, 2015, the ALJ filed his hearing decision. He made the following findings of fact and conclusions of law:

1. The plaintiff had not engaged in substantial gainful activity since July 15, 2012 (Tr. 17).

2. The plaintiff has severe impairments of anxiety, depression, COPD, arthritis, and osteoporosis (Tr. 17).

3. The plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 [the "Listings"] (Tr. 17). In making this finding, the ALJ discussed the plaintiff's mental impairments in respect to whether she met any of the

---

[2] Grid Rules 201.02 and 202.02.

mental listings. He found that she has a mild restriction in activities of daily living, and moderate restrictions in her activities of daily living and in concentration, persistence or pace, and had not experienced any episodes of decompensation. He pointed out that to satisfy the "paragraph B" criteria of the mental listings, the plaintiff would have to have a "marked" limitation in at least two of the areas of mental functioning mentioned above, or a "marked" limitation in one area along with repeated episodes of decompensation, each of extended duration (Tr. 17-18).[3]

4. The plaintiff "has the residual functional capacity ["RFC"] to perform simple, repetitive routine medium work…, except she cannot climb ladders, ropes or scaffolds; must avoid concentrated exposure to hazards and respiratory irritants; and can only occasionally interact with the general public, coworkers and supervisors (work better with things than people)." (Tr. 18). He discussed how he made the RFC determination. In doing so, he discussed the plaintiff's testimony and that of her sister and friend who testified at the hearing. He then discussed the evidence relating to both the plaintiff's mental and physical impairments. He found that the plaintiff's subjective complaints were not entirely credible, and explained his reasons for feeling the evidence supported his RFC finding. While he found that the plaintiff had both severe mental and physical impairments, he found that the plaintiff still possessed that RFC (Tr. 19-24).

5. The plaintiff cannot perform any of her past relevant jobs (Tr. 24).

6. The plaintiff was closely approaching retirement age on her alleged onset date. She has a limited education and no transferable job skills (Tr. 24).

---

[3] Plaintiff has not challenged the ALJ's findings relating to her mental impairment.

7. Based on the testimony of the VE, there are a significant number of jobs in the national economy the plaintiff can still perform with her RFC (Tr. 24-25).

8. The plaintiff is not disabled (Tr. 25).

## VI. Plaintiff's Assertion of Error

The plaintiff asserts that there is not substantial evidence to support the ALJ's RFC determination that the plaintiff could perform a reduced range of work at the medium level of exertion. In this regard, plaintiff maintains that the ALJ failed to properly evaluate the plaintiff's physical limitations under Social Security Ruling ["SSR"] 96-8p.

As pointed out by the plaintiff, SSR 96-8p requires the ALJ to formulate an RFC showing "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. It also states that "in order for an individual to do a full range of work at a given exertional level…, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by that exertional level." *Id.* at *3.

The exertional physical "functions" described above are set out in 20 C.F.R. § 404.1569a(b). These are sitting, standing, walking, lifting, carrying, pushing and pulling.

Plaintiff complains that "the ALJ failed to address each exertional level function by function in determining the RFC of the claimant." [Doc. 20, pg. 5]. She asserts that the evidence does not support a finding that she can perform the lifting requirements of medium work. As stated above, medium work requires the ability to lift 25 pounds frequently and up to 50 pounds occasionally, which is up to one third of an 8-hour workday. Plaintiff asserts that the exam of Dr. Wireman showed a limited range of motion and pulmonary function study results which are in the moderate severity category. She asserts that the only provision the ALJ made in the RFC for her pulmonary impairment was to avoid concentrated exposure to pulmonary irritants which she states is insufficient. She also complains that Dr. Wireman provided no opinion as to the amount of weight the plaintiff can lift and carry, or her ability to stand, walk and perform any of the other seven functions set out above.

Instead, plaintiff asserts that the ALJ relied on the opinion of Dr. Juliao, the State Agency physician who reviewed plaintiff's existing medical records and opined that she could perform within the medium range of exertion. Plaintiff states that Dr. Juliao found that the only effect of her severe impairments on her exertional capability was to diminish her lifting capacity from the heavy level of lifting 100 pounds occasionally and 50 pounds frequently, to the medium level of lifting 50 and 25 pounds respectively. The plaintiff points out that she was 60 years of age at the time Dr. Juliao issued his opinion, was only 5' 1'' tall, and weighed only 119 pounds. She describes Dr. Juliao's opinion that the plaintiff "could lift almost ½ of her body weight up to 1/3rd of a work day" as being "nonsensical" and "clearly erroneous." Specifically, plaintiff asserts that since

9

osteopenia is related to the plaintiff's age, her age should have been considered under SSR 96-8p. Also, plaintiff asserts that the ALJ saw the plaintiff at the administrative hearings and "witnessed the diminished physical stature of the [plaintiff] at the hearing." [Doc. 20, pg. 8]. Plaintiff also asserts that Dr. Juliao's opinion that she could stand or walk for six hours a day is not supported by the pulmonary function tests performed by Dr. Wireman.

For these reasons, plaintiff asks that the case be remanded to the ALJ for a complete physical consultative assessment. Plaintiff asserts that this will show she cannot perform medium work and would thus be disabled under the Grid rules set out above for both light and sedentary work.

## VII. Analysis

It is beyond dispute that this is a troublesome case given the plaintiff's age and physical size, and the strength requirements for medium work. In essence, the plaintiff asserts that it is "obvious" to anyone who has seen her that she cannot lift the weight required to do medium work. However, the ALJ's job was to evaluate all of the evidence in the record, including the testimony at the hearings, and determine the plaintiff's residual functional capacity based upon that evidence. There is no medical opinion evidence in the record other than that of Dr. Juliao. This is not a case of a treating source opining or even placing restrictions on a patient. It is a situation in which there is evidence of diagnoses and treatment for impairments the ALJ determined were severe, but in which there is only *one* medical opinion about her exertional abilities, and it is not contradicted by any other medical source.

Plaintiff asserts that SSR 96-8p required the ALJ to discuss all of the work-related functions one by one, particularly lifting and walking. However, in *Delgado v. Commissioner of Soc. Sec.*, 30 F.App'x. 542 (6th Cir. 2002), the Sixth Circuit stated that while SSR 96-8p "requires an ALJ to individually assess the exertional (lifting, carrying, standing, walking, sitting, pushing, and pulling) … capacities of the claimant in determining a claimant's RFC…case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Id.* at 547. Here, the medical evidence was *not* in dispute. The evidence disputing the RFC finding was the testimony of plaintiff and her witnesses, but after considering that testimony, the medical records, and Dr. Juliao's opinion, the ALJ determined that the plaintiff was not fully credible in her subjective complaints and that she could, as Dr. Juliao opined, perform a reduced range of medium work. While stating that a function by function analysis is "desirable," the Sixth Circuit stated that, in the written hearing decision, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado,* 30 F.App'x 542, 548 (6th Cir. 2002)(quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00–1995 (3d Cir. Dec. 19, 2000). The ALJ did exactly that in Ms. McAmis's case.

Regarding the opinion of Dr. Juliao itself, to which the ALJ assigned great weight, the plaintiff complains that it was "nonsensical" and "clearly erroneous." There is no doubt that State Agency physician's opinions can be relied upon by an ALJ in determining issues in a case, including RFC. *Rudd v. Comm'r of Soc. Sec.*, 531 F.App'x

719, 729 (6th Cir. 2013). However, plaintiff asserts that her age and bodily size should have been considered under SSR 96-8p, ostensibly both by Dr. Juliao in arriving at his opinion and by the ALJ in assigning the opinion great weight. However, SSR 96-8p appears to specifically exclude such physical characteristics, limiting the ALJ to considering "only limitations and restrictions attributable to medically determinable impairments," and saying specifically that "factors such as age or height" are not to be considered in assessing RFC. SSR 96-8p, 1996 WL 374184, *2. Therefore, if Dr. Juliao had opined that because of her age or diminutive physical size the plaintiff could not perform medium work, the ALJ could not have included this in his RFC determination.

With respect to the findings of Dr. Wireman during the consultative exam, plaintiff asserts that they showed both a restricted range of motion and serious respiratory problems which would have precluded the RFC found by the ALJ. However, Dr. Juliao analyzed the findings of Dr. Wireman and found the physical exam and pulmonary testing findings unremarkable (Tr. 111).

Plaintiff also asserts that Dr. Juliao only reviewed medical records through September 9, 2013. However, she does not indicate what records after that date contradict Dr. Juliao's opinions. In any event, a State Agency physician's opinion is not defective even if not based on all of the medical evidence in the record. *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011). Instead, the test is whether there is evidence in the record to support it. *Id*.

Also, the ALJ did not simply rely on Dr. Juliao, but also upon the entire medical record. He noted that plaintiff's examinations showed some wheezing and mild swelling

in the extremities, but were "otherwise normal." (Tr. 23). She was able to move about satisfactorily, and had never been referred to a specialist for any of her conditions. In spite of her asserted shortness of breath, and despite numerous recommendations from her treatment providers to stop, the plaintiff continued to smoke. The ALJ found that while she had some serious limitations, the records showed that all work activity was not precluded by her conditions (Tr. 23).

As stated earlier, this case presents greater complexities than most due to the plaintiff's age and other factors. However, the ALJ had substantial evidence, and medically uncontradicted evidence, that the plaintiff could perform the reduced range of medium work reflected in his RFC finding. He did not violate SSR 96-8p. This case could conceivably have gone either way, but the call was the ALJ's and not the Court's. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 19] be DENIED, and that the Commissioner's Motion for Summary Judgment [Doc. 21] be GRANTED.[4]

Respectfully submitted,

s/ Clifton L. Corker
United States Magistrate Judge

---

[4] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).